The plaintiff claims a prescriptive right in the use of a certain driftway in the city of Stamford as a means of ingress and egress to its property, consisting of a 2.043-acre tract of land. Said driftway is located partially on the property owned by the defendants. The defendants' property is contiguous to that of the plaintiff. The defendants deny the existence of any right of way or driftway in the plaintiff. The plaintiff, in its complaint, has also claimed damages for the loss of *Page 12 
sale of plaintiff's property by act of the defendants; and the defendants claim damages, in a counterclaim, from the plaintiff by reason of damage caused by the plaintiff in the use of said disputed right of way.
The defendants Ralph A. Bounty and Grace K. Bounty are the owners of a certain lot known as lot number 10, and the defendant A. E. Bounty Company is the owner of a certain lot number 9. Both lots are shown on a map entitled "Map Showing 2.043 acres Owned by Country Lands, Inc., Stamford, Connecticut — R.A. #1 Residence Zone," on file in the Stamford town clerk's office and numbered 7,374. The defendant Ralph A. Bounty is also the owner of a certain lot known as lot 11 on a map entitled "Map Prepared For Joseph LiVolsi, Stamford, Connecticut, RA-1 Residence Zone — Total Area = 17.651 Acres," on file in the Stamford town clerk's office and numbered 5,954. The plaintiff, Country Lands, Inc., is the owner of a tract of land in Stamford consisting of 2.043 acres on said map numbered 7,374 on file in the Stamford town clerk's office.
The plaintiff's land is contiguous to that of the defendants, and the plaintiff claims a right of way over an old driftway which runs along a portion of the southerly boundary line of said lot 11 and also along the westerly and southwesterly boundary line of said lots 10 and 9, and through a portion of said lot 9; all of which is fully shown on said maps numbered 5,954 and 7,374. The defendants deny the existence of any right of way.
A. D. Halliwell, president of the plaintiff corporation, as president of another corporation first became acquainted with the plaintiff's property in March of 1941, when his then corporation, A. D. Halliwell, Inc., obtained an option to purchase a *Page 13 
73-acre tract of land, of which this 2.043 acres was a part. Said corporation took title to this tract in May of 1941. Title was transferred through various Halliwell corporations, and finally the plaintiff corporation is now the owner of record. The 2.043-acre tract is the only land which remained after the subdivision of the said 73-acre tract of land purchased by A. D. Halliwell through his corporation, A. D. Halliwell, Inc., in 1941 and which is now owned by the plaintiff.
All of the certified copies of the maps on file with the Stamford town clerk's office, introduced in evidence, show the driftway in question and its location. The driftway is first mentioned in the distribution in the estate of Edwin R. Lockwood in 1891, which divided a portion of this estate among two heirs, one of them being Alvin A. Lockwood, the predecessor in title of the plaintiff's property. Said property passed through the estate of Alvin A. Lockwood to his heirs and then, by a series of conveyances, to Denwoods, Inc., in 1931, and eventually to A. D. Halliwell, Inc., in May, 1941. This driftway was also referred to in the deeds and in the various maps. However, Erich Schroter, a title examiner who testified for the plaintiff, stated that he found no outright grant of any right of way or driftway in any deeds of the property in question. In 1962, the defendant Ralph A. Bounty filed in the land records a caveat in which he denied the existence by grant or by prescriptive right of way the right of the plaintiff to use the driftway shown on map numbered 7,374 as it passed over lots 9, 10 and 11 on map numbered 5,954.
If the plaintiff is to have a right of way over said driftway, it must have been acquired by prescription. Section 47-37 of the General Statutes provides as follows: "No person shall acquire a right of way or any other easement from, in, upon or *Page 14 
over the land of another, by the adverse use or enjoyment thereof, unless such use has been continued uninterrupted for fifteen years." To acquire a right of way by prescription, there must be a use which is (1) open and visible, (2) continuous and uninterrupted for fifteen years, and (3) made under a claim of right. Andrzejczyk v. Advo System, Inc.,146 Conn. 428; Zavisza v. Hastings, 143 Conn. 40,45; Gregory's, Inc. v. Baltim, 142 Conn. 296, 299;South Norwalk Lodge v. Palco Hats, Inc., 140 Conn. 370,373; Jones, Easements §§ 164, 269. Whether these requirements have been met in a particular case is primarily a question of fact. Gregory's, Inc.
v. Baltim, supra; South Norwalk Lodge v. PalcoHats, Inc., supra, 374; Klein v. DeRosa, 137 Conn. 586,589. The court finds that the plaintiff and its predecessors in title have met the three requirements needed to acquire a right of way by prescription.
A. THE SUBJECT RIGHT OF WAY WAS OPEN AND VISIBLE.
Map numbered 3,168, filed in 1941 and referred to in the deed to A. D. Halliwell, Inc., from Denwoods, Inc., shows the right of way. Also, all other maps on file in the land records, including the maps referred to in the deeds by which the defendants acquired title, show the outline of the right of way. The fact that the right of way in 1941 may have been surrounded by woods and not visible from the home of the defendants' predecessors in title is not important. The right of way was plainly visible and would have been visible if the owners investigated their property. Zavisza v. Hastings, 143 Conn. 40,45.
Ashleigh D. Halliwell, the principal stockholder of A. D. Halliwell, Inc., and of the plaintiff corporation, testified that prior to the purchase of the *Page 15 
seventy-three-acre tract, when he took an option on it, he was given a survey which was comparable to the outline data map survey shown on the map given to him by Denwoods, Inc., on May 1, 1941, when the subject property was purchased, which showed the driftway. During the year 1941, he obtained access to this property through a driftway sixteen and a half feet wide. It was a fixed road, well established, and no one ever told him he could not use this right of way. He saw the driftway marked on the survey and also mentioned in the deed of purchase. He never doubted that he had the right to use this driftway. He would drive his car on this driftway to point A on lot 9, located at a point between eight and twelve feet into said lot 9 on said maps numbered 5,954 and 7,374. A valley or chasm prevented the use of the driftway beyond this point A. In 1942, he built a house on the north part of this tract, fronting on Long Ridge Road. He occupied this house and obtained access to it from Long Ridge Road onto this driftway down to point A.
B. THE USE OF SAID RIGHT OF WAY WAS CONTINUOUS AND UNINTERRUPTED FOR FIFTEEN YEARS.
During the years of 1942, 1943 and 1944, trees were cut and were sold for firewood from this property. Woodcutters worked near point A, cutting down the trees, and trucks came down to that point to pick up the wood. Also, during the war years Halliwell decided to create a large lake on this property, west of point A. He employed engineers who used this right of way up to point A to do their work. A dam or dike was designed in 1944 and constructed after 1944. Bulldozers, power shovel, and draglines were moved over this right of way. This dam took two years to build. It was necessary to locate a brook outlet near point A before building this dam. The lake took from 1944 to 1952 to create. During this period, fill and humus were *Page 16 
sold from this property. Motor trucks made thousands of trips over this right of way, to remove the humus, topsoil and fill, which was then sold.
This entire seventy-three-acre tract was subdivided and offered for sale. It was shown to brokers and developers by driving them on this driftway from Long Ridge Road to point A. There remains only 2.043 acres of this property, a building site adjoining point A, which is listed for sale.
From 1941 to 1962, no one has ever interfered with the right to use this right of way. Plaintiff has used this right of way up to the present time. Real estate brokers have traveled by car on this right of way to point A from 1953 to date, to show this 2.043-acre site to prospective buyers, with no interference. A road builder, Buonfiglio Preli, testified that he has traveled on this right of way to point A from the year 1944 to 1966, and it was never closed or blocked. He drove trucks on it, brought in draglines, and also hauled out humus.
Ralph A. Bounty, a defendant in this action, is president of the A. E. Bounty Company, another defendant. He is also a land developer. In 1954, he purchased a thirteen-acre tract in this area in question. Six months later he purchased another tract of about three or four acres in the same area. The second tract is adjacent to plaintiff's land. In 1957, Ralph A. Bounty built his home on lot 10. The right of way in question was used extensively to bring in all of the building materials needed to build his house. Also, some muddy areas in the right of way were filled in by him with crushed stone to improve this right of way.
It is found that a prescriptive right was gained in 1956, prior to the construction of the Bounty house in 1957. The credible evidence clearly showed *Page 17 
that there was never any interruption by the defendants of the right of way until the present time. The only claim of interruption by the defendants was the recording of a caveat in 1962 which brought about the present action. All other attempts, by placing stones in the right of way, occurred more than fifteen years after the right of way had been used and were ineffectual because these stones were immediately removed by the user of the right of way.
C. THE SAID RIGHT OF WAY WAS USED UNDER A CLAIM OF RIGHT.
From the facts found, there can be no question that the plaintiff used the right of way from Long Ridge Road to point A under a claim of right. Halliwell was given a 1931 survey, prior to the purchase of this tract of land, showing the driftway as being the only means of access to this property, except that it was shared with another property owner. Also, there was never any interference with this claim until 1962.
The defendants claim, by way of counterclaim, that their properties have been damaged by plaintiff's use of said right of way in 1965. The plaintiff merely used the right of way in the same manner as it had been used since 1941 and as defendant Ralph A. Bounty did, himself, when he built his house in 1957. The counterclaim is rejected.
Plaintiff has claimed damages from the defendants for the loss of sale of said 2.043-acre tract, due to defendants' acts. Plaintiff, however, has not sustained its burden of proof, and no damages are allowed.
 The defendant Ralph A. Bounty is ordered to release the caveat recorded in the Stamford land records, and it is further ordered and directed that